**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES** | * |
| | * |
| v. | *   Crim. Case No.:  SAG-10-0344 |
| | * |
| **MICHAEL EVERETT BROWN,** | * |
| | * |
| **Defendant.** | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**AMENDED MEMORANDUM OPINION AND ORDER**

On April 8, 2011, United States District Judge J. Frederick Motz sentenced Defendant Michael Everett Brown to 180 months of incarceration, to be followed by a period of five (5) years of supervised release.  ECF 48.  Brown is currently incarcerated at FCI Ray Brook in Ray Brook, New York, and is scheduled to be released on February 28, 2024.  ECF 64 at 1; ECF 68 at 2.  On June 2, 2020, Brown filed an Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and a separate Memorandum of Law under seal.  ECF 62; ECF 64 (collectively, "the Motion").  The Government opposed, ECF 68,[1] and Brown replied, ECF 70.  For the reasons that follow, Brown's Motion will be denied.[2]

**I.    FACTUAL BACKGROUND**

The following facts are derived from Brown's plea agreement.  ECF 41.  On August 14, 2009, Baltimore Police Department officers executed a search warrant at Brown's residence, after having utilized a confidential informant to arrange a narcotics purchase at the residence.  *Id.* at 4.

---

[1] Chief United States District Judge James K. Bredar, who was previously assigned to this case, provided the Government 21 days to respond.  ECF 66.  During that interim period, on June 19, 2020, the case was transferred to this Court.

[2] This Amended Memorandum Opinion & Order contains the parties' proposed redactions to the original version filed on June 26, 2020, which remains under seal.

Officers found a loaded .22 caliber revolver underneath Brown's mattress, as well as .38 caliber and 9mm ammunition in Brown's bedroom. *Id.* At the time of the offense, Brown had been convicted of three or more serious drug offenses, as defined by 18 U.S.C. § 924(e)(2)(A)(ii). *Id.* at 5. Accordingly, Brown qualified as an "Armed Career Criminal" under 18 U.S.C. § 924(e). *Id.*

On June 17, 2010, a federal grand jury returned a one-count indictment against Brown for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). ECF 1. Pursuant to his written plea agreement, Brown pled guilty to the Indictment on February 2, 2011. ECF 41; *see* ECF 40 (Brown's re-arraignment). Brown agreed that, for purposes of the Sentencing Guidelines, his adjusted Offense Level was 30, and his Criminal History Category was VI. ECF 41 at 5. At Brown's sentencing on April 8, 2011, Judge Motz found that Brown was in fact an Armed Career Criminal, and sentenced Brown to the statutory minimum sentence of 180 months, in addition to the five-year supervised release period. ECF 48; *see* 18 U.S.C. § 924(e)(1) (providing this statutory minimum).

On April 28, 2020, Brown, through the same counsel representing him in the instant proceeding, filed an administrative request for compassionate release with Warden Stanley Lovett at FCI Ray Brook. ECF 64-2. Brown argued that his "chronic asthma" made him "particularly susceptible to COVID-19." *Id.* at 1-2. The next day, on April 29, 2020, Warden Lovett denied Brown's request for compassionate release, and offered Brown the opportunity to appeal the decision within twenty (20) days. *Id.* at 3. Brown appealed the decision, but as of June 2, 2020, Brown had not received a response to his appeal. ECF 64 at 3. In his instant Motion, Brown cites to not only his history of asthma, but also the fact that he has hypertension, and is medically obese, as factors that make him more susceptible to experiencing a severe case of COVID-19, if he contracts the virus. *Id.* at 10-11.

## II. LEGAL STANDARDS

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018). While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons." § 603(b)(1). Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

## III. ANALYSIS

The Government appears to concede that Brown adequately exhausted his administrative remedies. *See* ECF 68 at 2-4 & n.1. Even assuming that this gatekeeping requirement is satisfied, Brown's Motion nonetheless fails to establish any "extraordinary and compelling reason[]" for compassionate release.

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018).  In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP.  *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."].

As several courts in this District have recognized, "[t]he First Step Act is in tension with the [Sentencing] Commission's Policy Statement," because the "catch-all" provision of § 1B1.13 cmt. n.1(D) only allows the BOP to determine what "other reasons" constitute "extraordinary and compelling" ones for release.  *United States v. Gutman*, Crim. No. RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020); *see also, e.g.*, *Wise v. United States*, Crim. No. ELH-18-72, 2020 WL 2614816, at *4-6 (D. Md. May 22, 2020) (describing how § 1B1.13 "is outdated in light of the [First Step Act]," and collecting cases holding similarly); *United States v. Decator*, __ F. Supp. 3d __, Crim No. CCB-95-0202, 2020 WL 1676219, at *2 (D. Md. Apr. 6, 2020) ("The Policy Statement in § 1B1.13, however, is at least partially inconsistent with the First Step Act."), *appeal docketed*, No. 20-6877 (4th Cir. June 15, 2020).  For the reasons elucidated by these courts, and others across the country, this Court concurs that it "may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-

(C)." *United States v. Redd*, __ F. Supp. 3d __, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *8 & n.18 (E.D. Va. Mar. 16, 2020); *see also United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases); *Decator*, 2020 WL 1676219, at *2; *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[D]ependence on the BOP to determine the existence of an extraordinary and compelling reason . . . is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act.").

Relevant to this case, as the Government correctly concedes, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[]" for an inmate's release under the First Step Act. *E.g.*, *Wise*, 2020 WL 2614816, at *6-8; *Gutman*, 2020 WL 2467435, at *2; *see* ECF 68 at 14 (the Government's concession). In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

The fact that COVID-19 is present in a correctional facility is not alone sufficient to qualify an inmate for compassionate release under the First Step Act. *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card."). Instead, to qualify for compassionate release, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more

5

likely to contract COVID-19 in his particular institution than if released. *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), *appeal filed*, No. 20-1523 (6th Cir. June 8, 2020); *United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2045381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *Mel*, 2020 WL 2041674, at *3; *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

The analysis under the first prong of this two-part inquiry is heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case of COVID-19. This Court recently issued an Opinion adopting the CDC's nonexhaustive list of risk factors that it believed leaves individuals at a higher risk for severe illness, were they to contract COVID-19. *United States v. Lewin*, Crim. No. SAG-15-198, 2020 WL 3469516, at *3-4 (D. Md. June 19, 2020). On June 25, 2020, the CDC revised its guidelines, based on its analysis of newly obtained information. The CDC first examines the risk presented to a given individual based on their age. *People Who Are at Increased Risk for Severe Illness: Older Adults*, CTRS. FOR DISEASE CONTROL & PREVENTION (last visited June 25, 2020), https://tinyurl.com/r9fsgvx [hereinafter CDC Age-Based

Risk Factors]. Generally, "[a]s you get older, your risk for severe illness from COVID-19 increases." *Id.* The age group at the highest risk, however, is those over the age of 65, as 8 out of 10 COVID-19 deaths reported in the United States are individuals in that group. *Id.* Brown is only thirty-six years old. According to the CDC's most recent data, those ages 30 to 39 are hospitalized at a rate of 52.5 per 100,000 people. CDC Age-Based Risk Factors, *supra*. Accordingly, Brown's age places him at low risk for severe illness from COVID-19.

Next, the CDC discusses an individual's increased risk for severe illness from COVID-19 based on underlying medical conditions.[3] From here, the CDC distinguishes between those conditions which **do** create an increased risk of severe illness, and those which **might** create an increased risk. *People Who Are at Increased Risk for Severe Illness: People with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (last visited June 25, 2020), https://tinyurl.com/y9chuzkm [hereinafter "CDC Underlying Condition Risk Factors"]. Those who **are** at an increased risk for severe illness are those who have:

- Chronic kidney disease;
- COPD (chronic obstructive pulmonary disease);
- A compromised immune system resulting from a "solid organ transplant";
- Obesity, defined as a BMI over 30;
- "Serious heart conditions," including heart failure, coronary artery disease, or cardiomyopathies;
- Sickle cell disease; and
- Type 2 diabetes mellitus

*Id.* On the other hand, the following conditions **might** cause an increased risk for severe illness:

- Moderate to severe asthma
- Cerebrovascular disease
- Cystic fibrosis
- Hypertension
- A compromised immune system from causes other than a solid organ transplant;
- Neurologic conditions, "such as dementia";

---

[3] Of course, the added risk from underlying medical conditions is considered in tandem with an individual's risk based on their age.

- Liver disease
- Pregnancy
- Pulmonary fibrosis
- Smoking
- Thalassemia
- Type 1 diabetes mellitus

*Id.*

Applying the above two-pronged test, Brown fails to establish his entitlement for compassionate release. First, Brown has not demonstrated that his underlying medical conditions compellingly elevate his risk of becoming severely ill, or dying, from COVID-19. Brown's main contention is that his asthma "alone sufficiently establishes 'extraordinary and compelling' reasons" entitling him to release. ECF 70 at 2. "Moderate to severe asthma," as noted above, is one of the conditions that **might** increase risk of severe complications. ███████████

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

4 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

5 ███████████████████████████████████████████████████████

██████████████████████████████████████████████  ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████  ████████████  ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████  In essence, while Brown has a diagnosed case of asthma, his case appears to be one of the least severe forms of asthma, and it does not even require daily medical treatment. The CDC Guidelines, however, state that only those with "moderate to severe" asthma **might** be at an increased risk for suffering from severe illness if they contract COVID-19.  *See* CDC Underlying Condition Risk Factors, *supra*.  Thus, Brown's asthma does not, by itself, compellingly elevate Brown's risk of severe illness.

Next, Brown cites his hypertension as another risk factor. ECF 64 at 10. Once again, hypertension is in the category of conditions that **might** increase a patient's risk of severe complications from COVID-19. ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  While it is certainly possible that Brown may experience more severe symptoms because of his elevated blood pressure, the Court is not convinced that this increased risk is great. *See* CDC Underlying Condition Risk Factors, *supra*.

Finally, Brown cites his obesity as a risk factor. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Since his BMI, at least early last year, was above 30, it is conceivable that the CDC guidelines would place him in a higher-risk category. *See* CDC Underlying Condition Risk Factors, *supra*.

Just because Brown might have one underlying condition that elevates his risk for severe illness from COVID-19 does not mean that he is entitled to compassionate release. Instead, his underlying medical conditions must compellingly increase his risk for severe illness, or death, if he were to contract COVID-19. Brown's medical records, as a whole, show that he might be just past the border between "overweight" and "obese." The Court cannot be sure, though, since he has not been weighed in almost nine months. He has both asthma and hypertension, but he has the least severe form of asthma, and there is no evidence that he requires regular medication to control either his asthma or his hypertension. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Considering all of this evidence, and Brown's young age, this Court cannot conclude that Brown's conditions so elevate his risk for severe illness should he contract COVID-19 that they constitute an extraordinary and compelling reason for compassionate release.[6]

---

[6] Brown has cited opinions from other judges of this Court, making compassionate release decisions based on other inmates' medical conditions that he describes as "similar" to his own. ECF 64 at 6-7; ECF 70 at 1-3. It is true that some other inmates that have been granted compassionate release also suffer from obesity, asthma, and/or high blood pressure. However, this Court does not find those decisions to be particularly persuasive, given (1) the uniquely fact-specific analysis required in this context, including each inmate's age, medical history, and the

Even if Brown's underlying medical conditions did compellingly elevate his risk for severe illness or death, Brown still fails to demonstrate he is at a particularly elevated risk of contracting COVID-19 at FCI Ray Brook. Brown urges that release is required because of news reports from April, 2020 detailing FCI Ray Brook's delayed reaction to the virus outbreak, and because the facility "is located in a rural community and the hospitals are ill-prepared for a surge of cases." ECF 64 at 11. This Court finds little relevance in FCI Ray Brook's initial response to the virus, given that, to date, only 20[7] of the facility's 558 inmates[8] have contracted the virus. Of those 20 inmates, only 5 currently have the virus, and the other 15 inmates have successfully recovered.[9] Whatever delay FCI Ray Brook officials had in responding to the virus threat, their actions since then have had a demonstrable effect on muting the virus's spread within the facility. Further, whatever concerns loomed in April about the ability of hospitals around FCI Ray Brook to handle a COVID-19 surge, Brown has provided nothing, other than his own speculation, to show that he would receive inadequate medical care if he contracted the virus. The only probative evidence on this claim – the fact that fifteen of his fellow inmates successfully recovered from the virus – lends Brown no support. Given that COVID-19 is currently almost non-existent in FCI Ray Brook, and the lack of any evidence to support his claim that his hypothetical treatment would be inadequate, Brown has failed to demonstrate that his current incarcerative setting creates a particularized risk of contracting COVID-19, sufficient to justify awarding him compassionate release.

---

conditions at the facility of incarceration; and (2) the CDC's constantly evolving understanding of how different underlying medical conditions impact one's experience with this novel virus.

[7] *COVID-19 Cases*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 25, 2020).

[8] *FCI Ray Brook*, BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/rbk/ (last visited June 25, 2020).

[9] *COVID-19 Cases*, *supra* n.6.

Because Brown has failed to provide an extraordinary and compelling reason for compassionate release, the Court need not address the relevant § 3553(a) sentencing factors. The Court observes, however, that granting Brown his requested compassionate release would likely conflict with the policy goals of both Congress and the Sentencing Commission, given that Brown was sentenced to the minimum mandatory sentence permitted under the Armed Career Criminal Act, which also fell within his advisory guidelines range as noted in Brown's plea agreement and sentencing paperwork. Ultimately, Brown is not entitled to the relief sought because he has not established a serious medical condition, under the circumstances of the current pandemic, a rampant COVID-19 outbreak at his place of incarceration, or any other extraordinary and compelling reason that might support his early release. Brown is essentially in the same position as all other incarcerated individuals, because they unfortunately are less able to engage in social distancing practices as a result of their confinement. That fact alone, however, is insufficient to justify this Court's invocation of compassionate release. Accordingly, Brown's Emergency Motion, ECF 62, will be denied.

## ORDER

For the reasons stated in the Memorandum Opinion above, it is, this 8th day of July, 2020, hereby **ORDERED** that Brown's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF 62, is **DENIED**. Further, for good cause shown, the outstanding Motions to Seal, ECF 67 and 69, are **GRANTED**.

/s/
Stephanie A. Gallagher
United States District Judge